HOEPPNER et al., Appellees and Cross–Appellants,

v.

JESS HOWARD ELECTRIC COMPANY et al., Appellants and Cross–Appellees.

[Cite as *Hoeppner v. Jess Howard Elec. Co.*, 150 Ohio App.3d 216, 2002-Ohio-6167.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 01AP–1468.

Decided Nov. 14, 2002.

218

Shayne & Greenwald Co., L.P.A., Gary D. Greenwald and Donell R. Grubbs, for appellees and cross-appellants.

Vorys, Sater, Seymour & Pease L.L.P., Gerald P. Ferguson and Kimberly Weber Herlihy, for appellants and cross-appellees Jess Howard Electric Company and Jess Howard Electric Company Employee Stock Ownership Plan.

Matan, Geer & Wright and Eugene L. Matan, for appellant and cross-appellee Jesse Howard.

---

BOWMAN, Judge.

{¶ 1} Defendants, Jess Howard Electric Company ("JHEC") and its majority shareholder, Jesse E. Howard, appeal from a portion of a judgment, entered upon the verdict of a jury, in favor of plaintiffs, Steven Hoeppner, Richard Needles, Roger Music, and George McGlothlin. Plaintiffs have filed a cross-appeal regarding issues related to attorney fees and litigation expenses.

{¶ 2} Jesse Howard founded JHEC in 1945 and has always owned the majority of the shares in the corporation. In 1984, JHEC established an employee stock ownership plan ("ESOP") for the benefit of its employees. The ESOP owns a minority of the shares in JHEC. By virtue of their employment, JHEC employees are permitted to become participants in the ESOP. The ESOP is governed by an Amended and Restated Employee Stock Ownership Plan ("ESOP document").

{¶ 3} According to the ESOP document, JHEC has discretion to determine whether and how much to contribute to the ESOP. When contributions are made to the plan, each employee participant receives a credit, measured by the value of JHEC stock, to his ESOP account. Participants do not receive actual shares of JHEC stock; rather, participant employees each have an account to which credits are allocated based upon the contributions from JHEC. The ESOP is the actual shareholder of JHEC stock. The ESOP document provides that the ESOP trustee has discretion to invest the value of a participant's account in a certificate of deposit when the employee severs employment with JHEC for any reason other than death, disability, or retirement. In the instant action, all four of the plaintiffs had resigned employment from JHEC prior to the time that they filed their initial complaint, and certificates of deposit had been purchased on their behalf. At the time of trial, certificates of deposit from Fifth Third Bank were held in the joint name of each plaintiff and the ESOP.

{¶ 4} Plaintiffs initiated this lawsuit on July 16, 1996, as a shareholders' derivative action. Plaintiffs alleged claims for fraud and breach of fiduciary duty against JHEC and Jesse Howard. Plaintiffs alleged that they were entitled to

recover on behalf of the ESOP, because they were ESOP participants, and on behalf of JHEC, because the ESOP was the minority shareholder in JHEC. Although the original complaint asserted several instances of alleged wrongdoing, plaintiffs abandoned many of their original theories and focused at trial on allegations that Jesse Howard and his wife, Joan Howard, were unreasonably compensated from 1982 to 1998 to the detriment of JHEC and the ESOP. The parties offered competing testimony regarding whether Jesse Howard and Joan Howard's compensation from 1982 to 1998 was reasonable and fair, and whether a deferred compensation package established for Jesse Howard was reasonable and fair.

{¶ 5} At the close of trial, defendants unsuccessfully moved for a directed verdict, arguing, among other things, that plaintiffs lacked standing, that plaintiffs' claims for damages prior to July 1992 are barred by the statute of limitations, and that plaintiffs' claims for breach of fiduciary duty are within the exclusive jurisdiction of the federal courts.

{¶ 6} The parties assisted the trial court in drafting general verdict forms and jury interrogatories. At the close of its deliberations, the jury returned a general verdict form in favor of defendants on the claim for fraud and a general verdict form in favor of plaintiffs on the claim for breach of fiduciary duty. On March 6, 2001, the trial court entered final judgment upon the jury verdicts and interrogatories. In part, the judgment entry states as follows:

{¶ 7} "IT IS THEREFORE ORDERED AND ADJUDGED as follows:

{¶ 8} "(1) Judgment on Count One of the Second Amended Complaint for breach of fiduciary duty be and is hereby granted in favor of JHEC and against HOWARD in the sum of $886,600.00;

{¶ 9} "(2) Judgment on Count One of the Second Amended Complaint for breach of fiduciary duty be and is hereby granted in favor of the ESOP and against Howard and JHEC in the sum of $382,313.00, representing the ESOP's allocable gross share of the Judgment entered in favor of JHEC as set forth above;

{¶ 10} "(3) Judgment on Count Two of the Second Amended Complaint for fraudulent misrepresentation and concealment be and is hereby granted in favor of HOWARD[.]"

{¶ 11} The trial court also ordered "that any motions for the award of attorney fees and expenses, either by means of fee shifting or payment from the common fund, shall be filed within sixty (60) days from the date of the Judgment Entry."

{¶ 12} On March 20, 2001, defendants moved for judgment notwithstanding the verdict. Defendants argued that (1) plaintiffs did not meet the requirements

under Civ.R. 23.1 to maintain a shareholders' derivative action; (2) the evidence presented at trial was insufficient to establish that Jesse Howard and Joan Howard received excessive compensation; (3) the statute of limitations bars any recovery for breach of fiduciary duty prior to July 16, 1992; and (4) plaintiffs' claims for breach of fiduciary duty are within the exclusive jurisdiction of the federal courts pursuant to Sections 1132(e)(1) and 1109(a), Title 29, U.S.Code. By entry dated November 26, 2001, the trial court denied the motion.

{¶ 13} By motion filed on May 7, 2001, plaintiffs asked the court (1) to order Jesse Howard to pay plaintiffs' attorney fees and litigation expenses; and (2) to order that plaintiffs' attorney fees and expenses be paid from the common fund of $886,600 created by the judgment entry, with a credit given in the amount of attorney fees and expenses assessed directly against Jesse Howard as part of a fee-shifting award. By entry dated December 28, 2001, the trial court granted in part plaintiffs' motion for attorney fees and expenses based upon an award from the common fund. As to the calculation, the judgment entry provides as follows:

{¶ 14} "* * * Plaintiffs' Counsel is awarded its Attorneys' Fees and Expenses from the common fund of $886,600.00. Counsel shall receive $41,209.74 in expenses and $145,407.12 in attorney fees, calculated as follows: $886,600.00 (common fund)-$41,209.74 (expenses) = $845,309.26 (net common fund) × .43 (ESOP share of net common fund based upon ESOP percentage of stock ownership) (i.e. percentage of stock not owned by Jesse Howard during 1990–1998 as submitted to the jury as part of the Jury Interrogatories) = $363,517.71 × .40 (Court-determined percentage of recovery from common fund) = $145,407.12."

{¶ 15} Defendants have already paid part of the judgment and intend to argue, in a pending federal action, that res judicata bars relitigation of issues related to breach of fiduciary duty arising out of excessive compensation for the period from July 16, 1992 through December 1998. Specifically, defendants have paid $139,429.86. Defendants contend that this payment satisfies the entire amount of the jury award in favor of the ESOP, plus interest, for 1993 through 1998, and for the period of 1992 that falls within the statute of limitations. Defendants' appeal, therefore, does not pertain to this portion of the judgment.

{¶ 16} On appeal, defendants assign the following errors:

{¶ 17} "ASSIGNMENT OF ERROR NO. 1

{¶ 18} "The court erred in denying defendants' motions for directed verdict and for judgment notwithstanding the verdict.

{¶ 19} "ASSIGNMENT OF ERROR NO. 2

{¶ 20} "The court erred in failing to adopt defendants' Proposed Judgment Entry, filed February 12, 2001, and instead entering its March 6, 2001 Judgment Entry.

{¶ 21} "ASSIGNMENT OF ERROR NO. 3

{¶ 22} "The court erred in granting, in part, plaintiffs' Motion for an Award of Attorneys Fees and Expenses."

{¶ 23} Plaintiffs have filed a cross-appeal, assigning the following errors:

{¶ 24} "ASSIGNMENT OF ERROR NO. 1:

{¶ 25} "The court erred as a matter of law in failing to award to the successful plaintiffs in a shareholders derivative action attorney fees against defendants as part of a fee shifting remedy.

{¶ 26} "ASSIGNMENT OF ERROR NO. 2:

{¶ 27} "The court erred as a matter of law in denying in part plaintiffs' Motion for Award of Attorney Fees and Expenses under the 'common fund' doctrine."

{¶ 28} For clarity, we address defendants' assignments of error out of order. By their second assignment of error, defendants contend that the trial court erred when it entered judgment in plaintiffs' favor in the amount of $886,000. Defendants argue that the jury's verdict forms and interrogatories support a damage award of only $382,313. We agree.

{¶ 29} The jury returned two general verdict forms. By Verdict Form 4, the jury returned a verdict in favor of the defendants on the fraud claim. By Verdict Form 1, the jury returned a verdict in favor of plaintiffs on the breach-of-fiduciary-duty claim. Verdict Form 1, entitled General Verdict for the Plaintiffs—Breach of Fiduciary Duty, states as follows:

{¶ 30} "On Plaintiffs' claim of breach of fiduciary duty against Defendant Jesse E. Howard and Defendant Jess Howard Electric Company, we the undersigned jurors find in favor of Plaintiffs and against Defendants and award compensatory damages for the calendar years 1990 through 1998 in the amount of: $382,313.00."

{¶ 31} The jury also answered eighteen interrogatories. The jury was asked by interrogatories to determine whether "the Jess Howard Electric Company Employee Stock Ownership Plan (JHEC ESOP) was damaged" in each of the calendar years from 1990 through 1998. Because the jury concluded that the ESOP had been damaged in each of the calendar years, the jury was further instructed to complete damages worksheets for each of the eight years. In each worksheet, the jury was asked to assess (1) the amount of unreasonable compen-

sation paid to Jesse Howard, (2) the amount of unreasonable compensation paid to Joan Howard, and (3) the damages attributable to Jesse Howard's deferred compensation contract. The jurors were further instructed to total the sum of these three items and to multiply the sum by a specific multiplier, "which represents the JHEC ESOP's percentage ownership of all JHEC shares issued and outstanding" for each of the calendar years. Once all these calculations were completed, the sum of all eight years amounted to $382,313, the same amount that the jury awarded as compensatory damages, pursuant to Verdict Form 1, for defendants' breach of fiduciary duty.

{¶ 32} Civ.R. 58 instructs the trial court to promptly enter judgment upon a general verdict of a jury. When a general verdict is accompanied by answers to jury interrogatories, Civ.R. 49(B) provides that "[w]hen the general verdict and the answers are consistent, the appropriate judgment upon the verdict and answers shall be entered pursuant to Rule 58." We conclude that the jury's interrogatory answers and general verdict forms are consistent in awarding damages of $382,313.

{¶ 33} We conclude that it is impermissible speculation on the part of the trial court to surmise that the jury intended to award additional damages on behalf of the corporation. Neither the interrogatories nor the general verdict form asked the jury to assess damages on behalf of the corporation. By general verdict form, the jury awarded damages of $382,313 "[o]n Plaintiffs' claim of breach of fiduciary duty against Defendant Jesse E. Howard and Defendant Jess Howard Electric Company." The jurors were not asked by general verdict to award damages on behalf of the corporation. Likewise, the jury was asked only to perform damages calculations in the years for which it concluded that "the Jess Howard Electric Company Employee Stock Ownership Plan (JHEC ESOP) was damaged." The jurors were not asked whether the corporation was damaged in those years. Although the jury indicated that Jesse Howard and Joan Howard received a total of $886,000 in overcompensation from 1990 to 1998, this calculation was merely incidental to its effort to ascertain the amount of damages to the ESOP after it concluded that the ESOP had been damaged.

{¶ 34} In reaching our conclusion, we note that plaintiffs' counsel assisted the court with drafting the verdict forms and interrogatories and that, before it released the jury, the trial court expressly asked counsel whether they were satisfied that the interrogatories were consistent with the verdict forms. Plaintiffs' counsel, therefore, had ample opportunity to present the jury with an option to award damages on behalf of the corporation. We find that it would be improper to imply that the jury intended to award damages to the corporation when plaintiffs' counsel neglected to ask for the award.

{¶ 35} Because we conclude that the jury's interrogatory answers and general verdict forms are consistent and award damages of $382,313, not $886,600, we sustain defendants' second assignment of error.

{¶ 36} By their first assignment of error, defendants contend that the trial court erred in denying defendants' motions for directed verdict and for judgment notwithstanding the verdict. The standard of review when considering motions for directed verdict and for judgment notwithstanding the verdict is virtually the same. For each, the evidence is construed most strongly in favor of the party against whom the motion is directed, and the motion must be overruled unless, after construing the evidence, reasonable minds could reach no other conclusion but that, under the applicable law, the movant is entitled to a judgment in his favor. See *Nickell v. Gonzalez* (1985), 17 Ohio St.3d 136, 137, 17 OBR 281, 477 N.E.2d 1145; *Cardinal v. Family Foot Care Centers, Inc.* (1987), 40 Ohio App.3d 181, 183, 532 N.E.2d 162.

{¶ 37} Defendants argue that they were entitled to judgment on some or all of plaintiffs' claims as a matter of law for a variety of reasons. First, defendants contend that plaintiffs' claim for breach of fiduciary duty was within the exclusive jurisdiction of the federal courts and, accordingly, the trial court lacked subject matter jurisdiction over that claim. Second, defendants contend that they are entitled to judgment as to any damages awarded for the period prior to July 16, 1992, as that period is outside the relevant statute of limitations. Third, defendants contend that plaintiffs lacked standing to maintain this action because they did not meet the requirements of Civ.R. 23.1. We address each of these arguments in turn.

{¶ 38} Defendants contend that the trial court lacked subject matter jurisdiction over plaintiffs' claim for breach of fiduciary duty, as that claim is within the exclusive jurisdiction of the federal courts pursuant to the Employee Retirement Income Security Act ("ERISA"), Section 1001 et seq., Title 29, U.S.Code. We disagree.

{¶ 39} ERISA is a federal regulatory scheme governing employee benefits plans, and the parties agree that the ESOP at issue is an ERISA plan. Section 514(a) of the Act specifically provides that ERISA shall supersede state laws related to employee benefit plans arising under the Act. Section 1144(a), Title 29, U.S.Code. Pursuant to Sections 1132(e)(1) and 1109(a), Title 29, U.S.Code, claims for breach of fiduciary duty owed under an ERISA plan are within the exclusive jurisdiction of the federal courts. Section 1109(a), Title 29, U.S.Code imposes liability for breach of fiduciary duty under ERISA as follows:

{¶ 40} "Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this

subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."

{¶ 41} In their claim for breach of fiduciary duty, plaintiffs do not contend that Jesse Howard or anyone else breached responsibilities, obligations, or duties imposed by the federal ERISA. Rather, plaintiffs allege that Jesse Howard, as JHEC majority shareholder, breached his fiduciary duties to the minority shareholder, which happens to be an ESOP. We conclude that the mere fact that the minority shareholder is an ERISA plan does not convert plaintiffs' breach-of-fiduciary-duty claim premised upon state corporate law into a preempted ERISA claim. See, e.g., *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enterprises, Inc.* (C.A.5, 1986), 793 F.2d 1456, 1470 (holding that ERISA does not preempt state law breach-of-fiduciary-duty claims where the claims involve the relationship between a corporate director and shareholders and not the fiduciary duties defined by ERISA).

{¶ 42} Defendants next argue that they are entitled to judgment for damages awarded for breach of fiduciary duty prior to July 16, 1992, as that period is outside the statute of limitations. The parties agree that plaintiffs' claim for breach of fiduciary duty is governed by a four-year statute of limitations. See R.C. 2305.09. Plaintiffs filed their original complaint on July 16, 1996. Accordingly, the applicable statute of limitations bars recovery for damages prior to July 16, 1992. Plaintiffs contend, however, that they are entitled to collect damages prior to July 16, 1992, because the doctrine of equitable estoppel tolls application of the statute of limitations.

{¶ 43} "The purpose of equitable estoppel is to prevent actual or constructive fraud and to promote the ends of justice." *Ohio State Bd. of Pharmacy v. Frantz* (1990), 51 Ohio St.3d 143, 555 N.E.2d 630. To invoke the doctrine, a party must demonstrate (1) a factual misrepresentation, (2) that the misrepresentation is misleading, (3) that the misrepresentation induced actual reliance that was reasonable and in good faith, and (4) that it caused detriment to the relying party. *Romine v. Ohio State Hwy. Patrol* (2000), 136 Ohio App.3d 650, 654, 737 N.E.2d 586. In order to apply the doctrine to the statute of limitations, a party must show that the misrepresentation "was calculated to induce a plaintiff to forgo the right to sue." *Welfley v. Vrandenburg* (Mar. 29, 1996), Franklin App. No. 95APE11–1409, 1996 WL 145467.

{¶ 44} An appellate court reviews a lower court's application of the doctrine of equitable estoppel for abuse of discretion. *Payne v. Cartee* (1996),

111 Ohio App.3d 580, 589, 676 N.E.2d 946. We conclude that the trial court abused its discretion when it applied the doctrine of equitable estoppel, as the record does not support its application. Plaintiffs did not ask the jury, by interrogatories, to engage in fact finding regarding the underlying elements for application of equitable estoppel, and the record does not establish that defendants made misrepresentations calculated to induce plaintiffs to forgo their right to sue. Moreover, the jury expressly returned a verdict *in defendants' favor* on the claim for fraud. In light of this record, we conclude that plaintiffs are barred from recovering damages prior to July 16, 1992.

{¶ 45} Finally, defendants argue that the trial court erred when it failed to grant judgment in their favor, as plaintiffs lacked standing to prosecute a shareholders' derivative action. We decline to address this argument, as defendants have already paid the judgment for damages awarded to the ESOP for 1993 to 1998, and for the period in 1992 after July 16, 1992. Because this judgment has been satisfied, we conclude that defendants' standing argument is moot, as it can impact only upon the damage award that defendants have already paid.

{¶ 46} In light of the foregoing analysis, defendants' first assignment of error is sustained in part and overruled in part. The first assignment of error is overruled with regard to defendants' argument that the trial court lacked subject matter jurisdiction over the breach-of-fiduciary-duty claim, and it is overruled as moot with regard to the issue of plaintiffs' standing to maintain a shareholders' derivative action. The first assignment of error is sustained with regard to the statute-of-limitations argument, as we conclude that plaintiffs are barred from recovering damages for the period prior to July 16, 1992. Upon remand, the trial court is instructed to recalculate the damages award by subtracting from $382,313 the portion of the award that compensated plaintiffs for damages outside the limitations period.

{¶ 47} We next address the assignments of error related to the issue of attorney fees and expenses. By their third assignment of error, defendants contend that the trial court erred by granting attorney fees and expenses to plaintiffs out of the common fund of $886,600. Defendants argue that plaintiffs were not entitled to any attorney fees or expenses because the jury did not make the prerequisite finding that Jesse Howard acted with bad faith or malice. Defendants further argue that, assuming that plaintiffs were entitled to recover attorney fees, their recovery should be limited to fees related to their breach-of-fiduciary-duty and fraud claims, and they have not properly segregated their billing records to limit fees to those claims. Finally, defendants contend that the trial court erred by awarding fees out of a common fund of $886,600 when the jury awarded damages of only $382,313, and only $123,607.68 of this amount is

within the statute of limitations. If the trial court is allowed to award attorney fees and expenses as a percentage of a common fund, defendants argue, the common fund should be $123,607.68.

{¶ 48} By their cross-appeal, plaintiffs also challenge the trial court's award of attorney fees and expenses. By their first cross-assignment of error, plaintiffs argue that the trial court erred because it refused to assess plaintiffs' attorney fees and expenses against defendants. Plaintiffs contend that they are entitled to recover their attorney fees and expenses from defendants because the record demonstrates that Jesse Howard acted in bad faith, and defendants should pay plaintiffs' fees and expenses as a matter of equity. By their second cross-assignment of error, plaintiffs contend that, assuming that attorney fees and expenses will be awarded out of a common fund and not as an assessment against defendants, the trial court miscalculated the amount of attorney fees to which plaintiffs are entitled under the common-fund doctrine. Plaintiffs argue that from the common fund of $886,600, they are entitled to deduct $41,209.74 in expenses and $338,156.10 in attorney fees, which represents 40 percent of the common fund of $886,600 minus expenses.

{¶ 49} An award of attorney fees is a matter within the sound discretion of the trial court. *Layne v. Layne* (1992), 83 Ohio App.3d 559, 568, 615 N.E.2d 332. Thus, an award for attorney fees will not be overturned on appeal absent an abuse of discretion. *Motorists Mut. Ins. Co. v. Brandenburg* (1995), 72 Ohio St.3d 157, 160, 648 N.E.2d 488. A reviewing court will not disturb the judgment unless it reflects an arbitrary, unreasonable, or unconscionable attitude. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 50} We conclude that the trial court did not abuse its discretion when it denied plaintiffs' motion to recover attorney fees and expenses as part of a fee-shifting remedy.

{¶ 51} Ohio follows the longstanding "American rule" on attorney fees that a prevailing party may not recover attorney fees absent statutory authority or a finding of conduct that amounts to bad faith. *Krasny–Kaplan Corp. v. Flo-Tork, Inc.* (1993), 66 Ohio St.3d 75, 77, 609 N.E.2d 152; *Vance v. Roedersheimer* (1992), 64 Ohio St.3d 552, 556, 597 N.E.2d 153. Furthermore, in *Digital & Analog Design Corp. v. N. Supply Co.* (1992), 63 Ohio St.3d 657, 590 N.E.2d 737, paragraph three of the syllabus, the Ohio Supreme Court stated that "a trial court must submit to a jury the issue of whether attorney fees should be awarded in a tort action."

{¶ 52} In the instant action, there is no indication in the record that plaintiffs asked the trial court to submit the issue of attorney fees to the jury. Further-

more, although plaintiffs argue that the record demonstrates that an assessment of attorney fees against defendants is warranted because Jesse Howard acted in bad faith, we conclude that the record is also replete with competing evidence from which the jury and trial court could conclude that Jesse Howard acted in the best interests of the company and his employees. Moreover, the jury made no finding that Jesse Howard acted in bad faith, and the jury expressly found in Jesse Howard's favor on the issue of fraud. Under these circumstances, we conclude that the trial court did not err when it declined to assess attorney fees and expenses against defendants. We therefore overrule plaintiffs' first cross-assignment of error.

{¶ 53} We further conclude that the trial court did not abuse its discretion when it awarded attorney fees and expenses pursuant to the common-fund doctrine. The common-fund doctrine is the exception to the general American rule that, absent statutory authority or a finding of bad faith, a prevailing party may not recover attorney fees as part of the cost of litigation. *Rocca v. Wilke* (1977), 53 Ohio App.2d 8, 17, 7 O.O.3d 12, 371 N.E.2d 223. The doctrine, first enunciated in *Trustees v. Greenough* (1881), 105 U.S. 527, 537, 26 L.Ed. 1157, provides that one who recovers a common fund for the benefit of others than himself should be entitled to payment for attorney fees from the fund on the theory that those benefited by the fund would otherwise be unjustly enriched. In discussing this doctrine, the Ohio Supreme Court stated as follows in *Smith v. Kroeger* (1941), 138 Ohio St. 508, 514–515, 21 O.O. 386, 37 N.E.2d 45:

{¶ 54} "* * * 'The general rule is that a court of equity, or a court in the exercise of equitable jurisdiction, will in its discretion order an allowance of counsel fees, or, as it is sometimes said, allow costs as between solicitor and client, and sometimes directly to the attorney who, at his own expense, has maintained a successful suit for the preservation, protection, and increase of a common fund or common property, or who has created at his own expense, or brought into a court a fund in which others may share with him.' "

{¶ 55} Defendants argue that, pursuant to *Digital & Analog Design Corp.*, plaintiffs may not recover attorney fees and expenses under the common-fund doctrine because they did not submit the issue of attorney fees to the jury. Defendants fail to offer any authority, however, to indicate that *Digital* and its progeny apply to the common-fund doctrine, and we refuse to extend *Digital* in a way that would limit a trial court's ability, in exercise of its equitable jurisdiction, to apply the common-fund doctrine. We note that, while application of the common-fund doctrine apportions fees equally among those who will benefit from the fund, it does not increase the amount of plaintiffs' award against defendants. Accordingly, to the extent that we conclude that the trial court did not abuse its discretion when it granted in part plaintiffs' motion to recover attorney fees and

expenses by utilizing the common-fund doctrine, we overrule in part defendants' third assignment of error.

{¶ 56}   Both parties argue that the trial court miscalculated the amount of the award when it applied the common-fund doctrine, and we agree.   As we have already concluded, plaintiffs are entitled to recover damages in the amount of $382,313 minus the amount of damages for the period prior to July 16, 1992. Accordingly, we overrule plaintiffs' second cross-assignment of error, as plaintiffs' argument that it is entitled to attorney fees and expenses out of a common fund of $886,600 is unavailing in light of our opinion.   We also sustain in part defendants' third assignment of error, inasmuch as we agree that the common fund out of which attorney fees and expenses may be assessed is limited to the $382,313 damages award minus the amount of damages that predate July 16, 1992.   Upon remand, the trial court shall award attorney fees and expenses out of a common fund of $382,313 minus the amount of damages outside the statute of limitations.

{¶ 57}   For the foregoing reasons, we sustain in part and overrule in part defendants' first assignment of error, we sustain defendants' second assignment of error, and we sustain in part and overrule in part defendants' third assignment of error.   With regard to the cross-appeal, we overrule plaintiffs' first and second cross-assignments of error.   The judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and this case is remanded to the trial court to determine that portion of the $382,313 damages award that compensated plaintiffs for damages prior to July 16, 1992, subtract that amount from $382,313, and enter judgment in plaintiffs' favor in the amount of the difference.   The amended damages award shall also serve as the common fund out of which the trial court shall recalculate its award of attorney fees and expenses pursuant to the common-fund doctrine.

Judgment affirmed in part,
reversed in part
and cause remanded with instructions.

Tʏᴀᴄᴋ, P.J., and Pᴇɢɢʏ Bʀʏᴀɴᴛ, J., concur.