OPINION
{¶ 1} Defendant-appellant, Ira E. Jackson, appeals from the December 7, 2004 Decision and Entry of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, in which that court overruled appellant's objections to the February 19, 2004 decision of a magistrate, and adopted the magistrate's decision, including a finding of child support arrearage in the amount of $25,948.68, and an order to liquidate the same.
 {¶ 2} The facts pertinent hereto are as follows. On April 4, 1981, Timothy Jackson ("Timothy"), was born to appellant and to plaintiff-appellee, Glendora Dodley, who were never married to one another. Seven months earlier, on September 29, 1980, appellant filed an action in the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, seeking a determination of parentage with respect to the unborn Timothy. On July 27, 1981, the court entered judgment establishing the parent-child relationship between appellant and Timothy. The court awarded custody of Timothy to appellee, and awarded visitation rights to appellant.
 {¶ 3} The court also ordered that appellant pay child support to appellee in the amount of $70.92 per week. Later, the order was modified to include collection through wage withholding. On December 5, 1990, the Franklin County Child Support Enforcement Agency ("FCCSEA"), sent a letter to appellee informing her that appellant's employment had been terminated and, thus, child support was no longer being withheld on Timothy's behalf. (Defendant's Ex. "D", page 1.) On the same date, FCCSEA also wrote to appellant informing him that his ex-employer had notified the agency that his employment had been terminated. The letter was incorrectly addressed to "Ira B. House" but it correctly references appellee's name and the case number, and was sent to the address at which appellant had been living at the time. Appellant, however, denies that he received it. The letter states, "[y]ou, as the obligor, are responsible to see that all payments for support are made * * *." (Defendant's Ex. "D", page 2.)
 {¶ 4} Appellant paid no child support from December 1990 until 1996. In that year, appellee requested that FCCSEA investigate whether appellant was employed. The agency discovered that appellant was working. Thereafter, the agency resumed withholding child support from appellant's wages. On December 12, 1997, appellant, through counsel, filed a motion seeking termination of the child support order "inasmuch as his employment with DCSC was terminated on September 30, 1997." Appellant never perfected service upon appellee, and the motion was ultimately dismissed.
 {¶ 5} On September 16, 1999, the court modified the child support order to the amount of $243.36 per month, effective August 1, 1999. In the year 2000, FCCSEA conducted a termination investigation in anticipation of Timothy's emancipation in June 2000. The FCCSEA filed its report on June 7, 2000, and recommended to the court that the child support order terminate as of June 4, 2000, the date upon which Timothy graduated from high school. The FCCSEA also recommended that the court find a child support arrearage in the amount of $25,948.68 as of June 4, 2000, and that the court order that the same be liquidated at the rate of $350 per month.
 {¶ 6} The court entered an order to that effect, which was journalized June 29, 2000. However, because appellant was apparently never properly served with the FCCSEA report and thus did not have an opportunity to object to same, the court vacated the June 29, 2000 entry on September 8, 2003. This was done after appellant filed his "Motion For Determination as to the Status of Child Support, for Reimbursement and for Attorney's Fees," which he filed on May 30, 2003.
 {¶ 7} The court assigned the matter to a magistrate, who treated appellant's May 30, 2003 motion as an objection to the original FCCSEA report. The matter was heard on November 21, 2003. Appellant was represented by counsel and appellee appeared pro se. Appellant did not challenge the amount of the arrearage; the only challenges he raised were the affirmative defenses of waiver, laches and estoppel.
 {¶ 8} Appellant argued that the judgment establishing his child support arrearage should be reversed because appellee waited too long to assert her rights to the child support that was not paid between 1990 and 1996. Though appellant knew he was not paying child support during this period, and knew that no court order had terminated his obligation to do so, it is appellee's alleged inaction during this period that appellant relied upon for his argument that laches should bar appellee's claim to the arrearage. He argued that appellee's failure to attempt to enforce the court's order during this period, despite the fact that she knew she was no longer receiving child support, extinguished her right to recover the arrearages. He argued that appellee's delay in pursuing the arrearages was unreasonable and that such delay prejudiced him. Specifically, he alleged that the prejudice he suffered was that he was unable to see his minor son throughout the period for which he paid no support.
 {¶ 9} Appellee testified that she did not know how to contact appellant, but that her residence address and telephone number have always been published, and that if appellant had wished to exercise visitation with Timothy, he could have done so. Appellant acknowledged that he was aware that appellee's telephone number was listed, but testified that speaking with appellee over the telephone was "impossible." Appellee testified that FCCSEA's December 5, 1990 letter caused her to believe that she should simply wait for the "system" to work, and that the agency would resume withholding once appellant was employed. When this did not happen, and, in 1996, after she began hearing that appellant did have a job, she requested that FCCSEA investigate the matter.
 {¶ 10} The magistrate noted that mere delay in enforcing a child support order, without more, is insufficient to constitute material prejudice such that waiver, laches or estoppel would bar a claim for support arrearages. The magistrate thus found that no prejudice existed in the present case and overruled appellant's objection to the June 7, 2000 report of FCCSEA. Any loss of the parent-child relationship, the magistrate determined, was the result of appellant's own inaction and was not caused by any action or inaction on appellee's part. The magistrate recommended that the court find an arrearage of $25,948.68 and that the court order the same to be liquidated at the rate of $350 per month, payable through wage withholding.
 {¶ 11} Appellant filed objections to the magistrate's decision. The trial court overruled the objections after conducting a hearing and entertaining oral and written argument. First, the court rejected appellant's equitable defenses. It found that appellee's reliance on "the system" to resume withholding once appellant became employed does not constitute voluntary waiver of her right to receive child support. Further, the court reiterated that delay alone is not sufficient to invoke the defense of laches; rather, material prejudice must result from such delay. The court found that appellant had failed to establish that he had been materially prejudiced by any delay on appellee's part in asserting her right to child support. The court found that the six-year lapse of time during which appellant had no contact with Timothy was attributable solely to appellant's inaction and not to appellee's delay in asserting her right to receive child support. For the same reason, the court rejected appellant's estoppel defense.
 {¶ 12} Second, the court rejected appellant's argument that the magistrate erred in failing to join FCCSEA as a party and also failed to consider the agency's failure to act with respect to pursuing child support withholding during the arrearage period. The court found that the agency had in fact been joined as a party-defendant and had actually participated in the case in 2003. Further, the magistrate found that the agency's failure to act is irrelevant to appellant's ability to establish the elements of his affirmative defenses. The court relied for support of this proposition on the fact that FCCSEA itself has no "rights" with respect to child support because it simply acts as a means through which payments are collected and paid to the obligee. Thus, it has no rights to waive or upon which to slumber, and it has no right that it could be estopped from enforcing. Furthermore, the court found, appellant cannot establish material prejudice even if it could be said that FCCSEA unreasonably delayed in acting. Finally, the court overruled appellant's objection that he should have been awarded attorney's fees.
 {¶ 13} On appeal, appellant asserts one assignment of error for our review, as follows:
THE SUMMARY REJECTION THAT AN EQUITABLE DEFENSE REGARDING THE OBLIGATION OF CHILD SUPPORT (WAIVER, ESTOPPEL AND/OR LACHES) COULD BE MAINTAINED AS TO THE CHILD SUPPORT ENFORCEMENT AGENCY IS CONTRARY TO LAW AND MUST BE REVERSED[.]
 {¶ 14} The sole issue presented by appellant's assignment of error, then, is whether the trial court erred in determining that, in proceedings directed to the determination and liquidation of a child support arrearage, a child support enforcement agency is not the proper party against which an obligor may assert the equitable defenses of waiver, laches and estoppel. We need not reach this issue, however, because appellant did not successfully establish the elements of his equitable defenses, regardless of the party to which they are directed.
 {¶ 15} Issues of waiver, laches and estoppel are fact-driven and thus will not be reversed absent an abuse of discretion. Medical ImagingNetwork, Inc. v. Medical Resources, 7th Dist. No. 04 MA 220, 2005-Ohio-2783, ¶ 23 (waiver); Still v. Hayman, 153 Ohio App.3d 487,2003-Ohio-4113, 794 N.E.2d 751, ¶ 8 (laches); Hoeppner v. Jess HowardElectric Co., 150 Ohio App.3d 216; 2002-Ohio-6167, 780 N.E.2d 290, ¶ 44 (equitable estoppel).
 {¶ 16} Waiver is not to be lightly inferred, and the burden of proving waiver is on the party asserting it. Griffith v. Linton (1998),130 Ohio App.3d 746, 751, 721 N.E.2d 146, citing Harsco Corp. v.Crane Carrier Co. (1997), 122 Ohio App.3d 406, 415, 701 N.E.2d 1040, and Campbell v. Automatic Die Prods. Co. (1954), 162 Ohio St. 321, 329,123 N.E.2d 401.
 {¶ 17} A waiver may be enforced by the person who had a duty to perform and who changed his or her position as a result of the waiver.Andrews v. State Teachers Retirement Sys. Bd. (1980), 62 Ohio St.2d 202,205, 16 O.O.3d 240, 404 N.E.2d 747. In the present case, the trial court found that appellant did not change his position; that is, cease continuing companionship with Timothy, because FCCSEA ceased withholding child support from his wages. Rather, the court specifically found that "any harm to [the] father/son relationship was due to Defendant's failure to contact and/or visit his son for the six-year period, and is thus attributable to Defendant's own inaction * * *." (Decision and Entry, 8.)
 {¶ 18} We perceive no abuse of discretion in this finding. Appellant testified, on direct examination, that he was aware that he had the right to see his son, but simply chose not to do so:
Q. From that point on, did you feel you had even any rights to your son?
A. I knew that I had the right, not only for visitation, but to have the child with me over the weekends, every other weekend. And from years of hassle and violence from Glendora Dodley, the first thing that came to my mind was, "I'm going to stop this money and we can just forget the whole thing. That's the first thing that came to my mind, so I let it alone.
(Nov. 21, 2003, Tr., 51-52.) Absent proof of a detrimental change in position in reliance upon the cessation of wage withholding, appellant cannot establish the equitable defense of waiver.
 {¶ 19} Laches is defined as "an omission to assert a right for an unreasonable and unexplained length of time, under circumstances prejudicial to the adverse party." Akron Gen. Med. Ctr. v. Foutty (Feb. 14, 2001), 9th Dist. No. 20152, quoting Smith v. Smith (1957),107 Ohio App. 440, 443-444, 77 Ohio L.Abs. 195, 146 N.E.2d 454. To prevail under the equitable doctrine of laches, a proponent must establish: (1) unreasonable delay or lapse of time in asserting a right; (2) absence of an excuse for such delay; (3) knowledge, actual or constructive, of the injury or wrong, and (4) prejudice to the other party. State ex rel. Cater v. N. Olmsted (1994), 69 Ohio St.3d 315, 325,631 N.E.2d 1048.
 {¶ 20} In the present case, the trial court found that appellant had not experienced any prejudice as a result of the six-year suspension of child support wage withholding. As mentioned above, the court found that any damage to appellant's relationship with Timothy was the result of appellant's own decision to discontinue visitation. Even during the period in which he was not paying child support, appellant was entitled to his court-ordered companionship time with Timothy because, as the trial court correctly noted, the right to visitation and the obligation to pay child support are independent of one another. See, e.g., Porter v. Ferrall,
11th Dist. No. 2002-P-0109, 2003-Ohio-6685, ¶ 22; Fuller v. Fuller (June 14, 2000), 4th Dist. No. 99 CA04, 2000 Ohio App. LEXIS 2736; Davis v.Davis (1988), 55 Ohio App.3d 196, 563 N.E.2d 320; Weickert v. Weickert
(Aug. 6, 1999), 6th Dist. No. S-98-045; Rider v. Rider (Dec. 19, 1985), 2nd Dist. No. CA-9413; Bradley v. Bradley (Jan. 30, 1995), 5th Dist. No. 1994 CA 00219. That appellant chose not to exercise his right to visitation may indeed have adversely affected his relationship with Timothy, but does not establish appellant's defense of laches.
 {¶ 21} The court also correctly found that the fact that appellant must pay his child support obligation later, rather than sooner, does not constitute material prejudice. "The mere inconvenience of having to meet an existing obligation imposed not only by statute but by an order or judgment of a court of record at a time later than that specified in such statute or order cannot be called material prejudice." Smith v. Smith
(1957), 168 Ohio St. 447, 457, 7 O.O.2d 276, 156 N.E.2d 113. For the foregoing reasons, the trial court did not abuse its discretion in determining that appellant did not establish all of the elements of the defense of laches.
 {¶ 22} "The purpose of equitable estoppel is to prevent actual or constructive fraud and to promote the ends of justice." Ohio State Bd. ofPharmacy v. Frantz (1990), 51 Ohio St.3d 143, 555 N.E.2d 630. To invoke the doctrine, a party must demonstrate: (1) a factual misrepresentation; (2) that the misrepresentation is misleading; (3) that the misrepresentation induced actual reliance which was reasonable and in good faith; and (4) that it caused detriment to the relying party. Rominev. Ohio State Hwy. Patrol (2000), 136 Ohio App.3d 650, 654,737 N.E.2d 586; Hoeppner, supra, at ¶ 43. Our review of the record reveals that appellant's decision to discontinue spending time with his child was influenced by considerations that were solely his own; appellant presented no evidence that his decision was made in good faith reliance upon any factual misrepresentation made to him by appellee or by FCCSEA.
 {¶ 23} On appeal, appellant merely argues that, throughout the time period during which he paid no child support, he was justified in such failure because, "[f]or all appellant knew, the minor child had been adopted by some other individual, had died or otherwise. Naturally, from a practical standpoint, he discontinued any further fruitless attempts to see this child." (Brief of Appellant, 5.) By appellant's own admission, his decisions were guided by supposition, speculation and voluntary inaction. This is insufficient to establish the defense of equitable estoppel. Accordingly, the trial court did not abuse its discretion in determining that appellant's defense of equitable estoppel must fail.
 {¶ 24} Because the evidence fails to establish all of the elements of any of appellant's equitable defenses, it matters not who he was attempting to use these defenses against; rather, appellant is unable to assert the defenses against anyone. For that reason, his sole assignment of error is overruled and the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, is hereby affirmed.
Judgment affirmed.
Bryant and McCormac, JJ., concur.
McCORMAC, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), rticle IV, Ohio Constitution.